**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLORADO**

---

| | |
|---|---|
| JIM FAYDENKO, STEPHEN CONTI, CHAD HIXON, and ENYINNAYA OKWULEHIE | Civil Action No.: _____ |
| Plaintiffs, | |
| v. | |
| VAIL RESORTS, INC. and THE VAIL CORPORATION d/b/a VAIL RESORTS MANAGEMENT COMPANY, | |
| Defendants. | |

---

**CLASS ACTION COMPLAINT**

---

Plaintiffs Jim Faydenko, Stephen Conti, Chad Hixon, and Enyinnaya Okwulehie, on behalf of themselves and all others similarly situated, bring this class action against VAIL RESORTS, INC. and THE VAIL COPORATION d/b/a VAIL RESORTS MANAGEMENT COMPANY (collectively, "Defendants" or "Vail Resorts") and respectfully allege the following:

**NATURE OF ACTION**

1.      Vail Resorts touts itself as "the premier mountain resort company in the world" and to ski Vail, its premier resort, is "like nothing on earth™." Vail Resorts sold a variety of

daily and season passes for the 2019-20 season, including the Epic Pass, which it marketed as "the best value and variety for unlimited skiing and riding."[1]

2.     Vail Resorts announced in mid-March that due to the spread of COVID-19 it had closed all of its North American ski resorts for the remainder of the 2019-20 ski season ("Vail Closure"). Vail Resorts told its customers that "all season pass and Epic Day Pass products…are non-refundable and non-transferable to another season."[2]

3.     Plaintiffs bring this class action suit on behalf of themselves and all others similarly situated to seek redress for Defendants' refusal to refund fees after it closed all of its North American ski resorts, well short of the promised duration of the ski season. Vail Resorts collected fees from skiers, snowboarders (referred to herein as "riders"), and others, but then deprived them of the promised "unlimited skiing and snowboarding" from October 2019 to June 2020.

**PARTIES**

4.     Plaintiff Jim Faydenko is a citizen of Colorado and resides in Morrison, Colorado. Mr. Faydenko purchased an Epic Pass from Defendants for the 2019-20 season. Due to the Vail Closure, Plaintiff Faydenko was prevented from using the entire value of his Epic Pass.

5.     Plaintiff Stephen Conti is a citizen of California and resides in San Diego, California. Mr. Conti purchased an Adult Epic 4-Day Pass from Defendants for the 2019-20 season. Due to the Vail Closure, Plaintiff Conti was prevented from using the entire value of his Adult Epic 4-Day Pass.

---

[1] https://www.epicpass.com/info/epic-for-everyone-release.aspx (accessed on April 17, 2020).
[2] https://www.snow.com/info/message-to-our-guests.aspx (last accessed April 17, 2020).

6.      Plaintiff Chad Hixon is a citizen of Massachusetts and resides in Lynnfield, Massachusetts. Mr. Hixon purchased an Epic Local Pass from Defendants for the 2019-20 season. Due to the Vail Closure, Plaintiff Hixon was prevented from using the entire value of his Epic Local Pass.

7.      Plaintiff Enyinnaya Okwulehie is a citizen of Minnesota and resides in Brooklyn Center, Minnesota. Mr. Okwulehie purchased an Epic Local Pass from Defendants for the 2019-20 season. Due to the Vail Closure, Plaintiff Okwulehie was prevented from using the entire value of his Epic Local Pass.

8.      Defendant Vail Resorts, Inc. is a Delaware corporation, with its principal place of business in Broomfield, Colorado. Vail Resorts, Inc., among other things, owns and operates mountain resorts and urban ski areas.

9.      Defendant The Vail Corporation d/b/a Vail Resorts Management Company, is a Colorado corporation, with its principal place of business in Broomfield, Colorado. The Vail Corporation is a wholly-owned subsidiary of Vail Resorts, Inc.

## FACTUAL ALLEGATIONS

10.      Vail Resorts, Inc. through its subsidiaries operates 37 destination mountain resorts and regional ski areas, 34 of which are located in North America ("North America ski resorts"). Vail Resorts touts itself as "the premier mountain resort company in the world."[3]

11.      For the 2019-20 ski season, Defendants sold the Epic Pass, Epic Local Pass, and Epic 4-Day Pass. Defendants represented that "the Epic Pass and Epic Local Pass continue to

---

[3] http://www.vailresorts.com/Corp/info/who-we-are.aspx  (last accessed April 17, 2020).

offer the best value and variety for unlimited skiing and riding."[4] Defendants advertised that the Epic Pass "provides unlimited, unrestricted access to all of the Company's owned resorts and additional access to partner resorts around the world." Defendants sold the Epic Pass for $939 for the 2019-20 season.

12.     According to Defendants, the Epic Local Pass offered "[s]kiers and riders willing to navigate around a few peak dates…access to many of the same destinations." Defendants sold the Epic Local Pass for prices starting at $699 for the 2019-20 season. The Epic Local Pass carried certain blackout dates and limited the purchaser's use at Vail Resort and Beaver Creek Resort to a cumulative total of ten days.

13.     Because the individual daily rates for ski and snowboard passes are high – for instance at Vail resort over $200 – customers who anticipate skiing or riding a number of days will assess their own needs and purchase the appropriate Epic Pass. Many people take Spring Break ski vacations in March and April. For them, the cost effective way to purchase lift tickets was to purchase one type of the Epic Pass.

14.     However, to solidify its cash flow, Defendants required customers to purchase the Epic Pass or Epic Local Pass no later than September 2019. Thus, Defendants received nearly 100% of their 2019-20 season lift ticket revenue from Plaintiffs and Class Members before the ski season even began.

15.     Defendants also offered the Epic Day Pass for sale in 2019-20. Defendants sold the Epic Day Pass to customers who could select the number of days, from one to seven, and whether or not to add holiday access. Purchasers "can use their customized Epic Day Pass

---

[4] https://www.vail.com/plan-your-trip/lift-access/passes/epic-pass.aspx (last accessed April 17, 2020)

anytime through the season at any of the Company's North American owned resorts" and would be given access to other resorts if they purchased four or more days. Defendants' prices for Epic Day Passes for adults ranged from $106 to $731 and for children from $55 to $380, depending on the number of days and holiday restrictions.

16.     On June 3, 2019, Defendants published an article on its website titled "Earlier Openings, Longer Season, and Enhanced Guest Experience for the 2019-20 Winter Season." In the article, Defendants stated that they were "providing Epic Pass holders and all skiers and snowboarders in Colorado with one of the longest ski and snowboard seasons in the country." Moreover, Defendants stated, "With Keystone opening earlier and Breckenridge extending its winter seasons into June, Epic Pass holders can enjoy skiing and snowboarding in Colorado from October through May."[5]

17.     On March 14, 2020, without any prior notification to Plaintiffs or Class Members, Defendants initiated the Vail Closure by abruptly suspending all operations at their North America ski resorts and retail stores for one week promising an update in the next few days. Two days later, on March 17, 2020, Defendants announced "that all of its North American resorts and retail stores will remain closed for the 2019-20 winter ski season amidst the continued challenges associated with the spread of coronavirus (COVID-19)."[6]

---

[5]     http://blog.vail.com/capital-improvements-underway-at-vail-beaver-creek-breckenridge-keystone-and-crested-butte-leading-to-earlier-openings-longer-season-and-enhanced-guest-experience-for-the-2019-2020-winter-season/ (last accessed April 17, 2020).

[6] https://www.snow.com/info/vail-resorts-covid-19-resort-closing-update.aspx (last accessed April 17, 2020)

18.     By closing all of their North American ski resorts effective March 15, 2020, Defendants deprived Plaintiffs and Class Members of over 30% of the ski and snowboard season.

19.     Defendants also published a list of Frequently Asked Questions in connection with the Vail Closure. One of the questions asked, "How does the closure impact my season pass or Epic Day Pass?" Defendants answered, "To the extent that any of our resorts re-open during the season, your pass will be valid. Pursuant to the terms of all season pass and Epic Day Pass products, they are non-refundable and non-transferable to another season.  We will be reviewing these policies and providing any updated guidance in the coming weeks."[7]

20.     Furthermore, while the Defendants' Epic Pass website at www.snow.com provided a "Refund" tab, once clicked, it reiterates that there are no refunds for the Epic Passes. Additionally, Defendants maintain a Call Center for its Epic Pass customers. Defendants shuttered that Call Center concurrent with their shutdown of the ski resorts. Consequently, no holder of an Epic Pass can even discuss their situation or get details of why Defendants are not providing any refunds for the Passes.

21.     As part of the North America ski resort shutdown, Defendants eliminated virtually all employees to greatly reduce their operating costs.

22.     Thus, Defendants have eliminated virtually all of their costs of operating their North American ski resorts, yet have refused to refund any portion of the costs paid for the Epic Passes by Plaintiffs and the Class Members, which Passes were purchased with Defendants'

---

[7] https://www.snow.com/info/message-to-our-guests.aspx (last accessed April 17, 2020).

representations they could be used for the full duration of the ski and snowboard season through June 2020.

23.    Instead, Defendants have retained 100% of the fees paid by Plaintiffs and Class Members for their Epic Passes even after Defendants closed their resorts after only about two-thirds of the ski season had occurred. Defendants have not refunded any portion of such Pass fees.

24.    Plaintiffs seek relief in this action individually, and on behalf of all of Defendants' customers nationwide that purchased annual Epic and Epic Local Passes for the 2019-2020 season or Epic Day Passes for the 2019-2020 season who, as of March 15, 2020, had not used all of the days remaining on their Epic Day Passes. Plaintiffs seek relief for themselves and all Class Members for Defendants' breach of contract, breach of express warranties, negligent misrepresentation, and unjust enrichment, as well as violations of state consumer protection statutes.

## JURISDICTION AND VENUE

25.    This Court has subject matter jurisdiction over this controversy pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because (a) the proposed Class, defined below, consists of more than one hundred members; (b) the parties are minimally diverse, as members of the proposed Class are citizens of states different than Defendants' home state; and (c) the aggregate amount in controversy exceeds $5 million, exclusive of interests and costs.

26.    This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

27.     This Court has personal jurisdiction over Defendants because Defendants' principal places of business are within this District.

28.     Venue is proper in this District under 28 U.S.C. § 1391 because Defendants maintain their principal place of business within the District and a substantial part of the events giving rise to Plaintiffs' claims occurred here.

29.     Plaintiffs bring this action on behalf of themselves and as a class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure seeking damages on behalf of themselves and Class Members nationwide:

> All persons in the United States who purchased for the 2019-20 season an Epic Pass, or an Epic Local Pass, or who purchased an Epic Day Pass with days remaining on the Day Pass for use at a Vail North American ski resort.

30.     Excluded from the Class are: a) any Judge or Magistrate presiding over this action and members of their families; b) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest and their current or former employees; c) persons who properly execute and file a timely request for exclusion from the Class; d) the legal representatives, successors or assigns of any such excluded persons; and e) all persons who have previously had claims finally adjudicated or who have released their claims against Defendants similar to those alleged herein.

31.     If necessary or alternatively, Plaintiffs also seek to represent subclasses of individuals who purchased passes from Defendants in each of the 50 states and U.S. territories. As detailed below in their respective causes of action, each state subclass is referenced by the name of its state (*e.g.*, the California Subclass).

32.     Collectively, unless otherwise so stated, the above-defined classes and subclasses are referred to herein as the "Class."

33.     Plaintiffs reserve their right to amend the Class definitions if discovery or further investigation reveals that any Class should be expanded or narrowed, divided into additional subclasses under Rule 23(c)(5), or modified in any other way

34.     While the exact number and identities of the Class Members are unknown at this time, and can only be ascertained through appropriate discovery, on information and belief, the Class is so numerous that joinder of all Class Members is impracticable. Also, on information and belief, Vail Resorts maintains electronic records of all Epic Pass holders.

35.     Common questions of law and fact exist as to all members of the Class. Such questions of law and fact common to the Class include, but are not limited to, whether Defendants breached their contract and/or their warranty with their customers, whether Defendants negligently made misrepresentations, whether Defendants were unjustly enriched, and whether Defendants violated certain state consumer protection statutes.

36.     Plaintiffs' claims are typical of the claims of all Class Members because such claims arise from the Defendants' wrongful conduct, as alleged above. Plaintiffs have no interests that conflict with the interests of the other Class Members.

37.     Questions of law and fact common to all Plaintiffs and Class Members predominate over any questions affecting only individual Class Members, including legal and factual issues relating to liability and damages.

38.     Plaintiffs will fairly and adequately represent and protect the interests of the Class Members. Plaintiffs have retained competent counsel experienced in complex commercial litigation and class actions to represent themselves and the Class.

39.     Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons or entities with a method for obtaining redress for claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in management of this class action.

40.     Absent a class action, most Class members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of the individual Class members' claims compared to the anticipated costs of the litigation, it is likely that only a few, if any, Class members could afford to seek legal redress for the harms caused by Defendants' actions.

**COUNT I**
**Nationwide Class**
**Breach of Contract**

41.     Plaintiffs hereby repeat and reallege the allegations contained in paragraphs 1 through 40 above of this complaint, as if fully alleged herein.

42.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Nationwide Class against Defendants.

43.     Defendants offered the Epic Passes to Plaintiffs and Class Members to provide access, including skiing and snowboarding, to its North America ski  resorts for the entire season to June 2020 in exchange for Plaintiffs and Class Members payment in full of Pass fees.

44.     Each Plaintiff and all Class Members accepted Defendants' contractual offer and fully performed and complied with all conditions precedent including full payment to Defendants for the Passes. For the Epic Pass and Epic Local Pass, Defendants received all Pass revenue by the end of September 2019 for the 2019-20 ski and snowboard season.

45.     Defendants breached these contracts by retaining Plaintiffs' and Class Members' Pass fees while all of their North America ski resorts remain closed, terminating over 30% of the ski and snowboard season that Defendants contractually promised. Plaintiffs and Class Members have suffered an injury through the full payment of Pass fees, without a refund, while not having the contractually promised duration of access to Defendants' North American ski resorts.

## COUNT II
### Nationwide Class
### Breach of Express Warranty

46.     Plaintiffs hereby repeat and reallege the allegations contained in paragraphs 1 through 40 above of this complaint, as if fully alleged herein.

47.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Nationwide Class against Defendants.

48.     In connection with its sale of Epic Passes, Defendants made an express warranty that customers would have unlimited access to their North America ski resorts, or for the Epic Day Passes, that they would have access to Defendants' North America ski resorts for a specified number of days from October 2019 to June 2020.

49.     Defendants' affirmation of fact and promise in their marketing and signage became part of the basis of the bargain between Defendants and Plaintiffs and Class Members, thereby creating express warranties that the services would conform to Defendants' affirmation of fact, representations, promise, and description.

50.     Each Plaintiff and all Class Members fully performed and complied with all conditions precedent including full payment to Defendants for the Passes.

51.      Defendants breached their express warranty by failing to provide unlimited access for the duration of the warranted ski and snowboard season to their North America ski resorts, and, for the Epic Day Passes, by failing to provide access to those resorts when customers had days remaining on their Epic Day Passes.

52.     Plaintiffs and the Class Members were injured as a direct and proximate result of Defendants' breach because: (a) they would not have purchased or paid for Defendants' Passes absent Defendants' representations and omission of a warning that they would retain Class Members' Pass holder fees while all of their North America ski resorts are closed; (b) they would not have purchased Passes on the same terms absent Defendants' representations and omissions; (c) they paid a price premium for Defendants' Passes based on Defendants' misrepresentations and omissions; and (d) Defendants' Passes did not have the characteristics, benefits, or quantities as promised.

**COUNT III**
**Nationwide Class**
**Negligent Misrepresentation**

53.     Plaintiffs hereby repeat and reallege the allegations contained in paragraphs 1 through 40 above of this complaint, as if fully alleged herein.

54.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Nationwide Class against Defendants.

55.     Defendants misrepresented that customers would have unlimited access to its North America ski resorts for the duration of the represented ski and snowboard season to June 2020, or, for the Epic Day Passes, that they would have access to Defendants' North America ski resorts for a specified number of days during that entire season.

56.     Defendants made these representations without knowledge of their truth or veracity.

57.     Defendants negligently misrepresented and/or negligently omitted material facts about its Passes and services that its North America ski resorts would unconditionally be available for the entire 2019-20 ski and snowboard season to June 2020.

58.     The negligent misrepresentations and omissions made by Defendants, upon which Plaintiffs and Class Members reasonably and justifiably relied, were intended to induce and actually induced Plaintiffs and Class Members to purchase Defendants' Epic Passes.

59.     As a result of Defendants' misrepresentations, Plaintiffs and all Class Members made full payment to Defendants for Epic Passes.

60.     Plaintiffs and Class Members would not have purchased Defendants' Epic Passes, or would not have purchased the services on the same terms, if the true facts had been known.

61.     The negligent actions of Defendants caused damage to Plaintiffs and Class Members, who are entitled to damages and other legal and equitable relief as a result.

**COUNT IV**
**Nationwide Class**
**Unjust Enrichment**

62.     Plaintiffs hereby repeat and reallege the allegations contained in paragraphs 1 through 40 above of this complaint, as if fully alleged herein.

63.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Nationwide Class against Defendant.

64.     Plaintiffs and Class Members conferred benefits on Defendants by paying in advance and in full for the Epic Passes they purchased from Defendants.

65.     Defendants have knowledge of such benefits and accepted those in full payments knowing the representations they made and services they were to provide in consideration for those payments, namely, (a) for the Epic Pass holders, unlimited skiing and riding at all North America ski resorts to June 2020; (b) for the Epic Pass holders, unlimited skiing and riding at all North America ski resorts to June 2020 with certain limitations at premier resorts and blackout dates irrelevant to this claim; and (c) for the Epic Day Pass, skiing and riding at the specified North America ski resorts for the number of days, from one to seven, paid for the duration of the 2019-20 season to June 2020. Defendants developed the Epic Pass program with the specific purpose to obtain nearly 100% of its ski revenues by the end of September, before the ski season began.

66.     As a result of the Vail Closure, Defendants received 100% of the revenues for their Passes sold to Plaintiffs and Class Members, but Defendants cancelled over 30% of the ski season depriving Plaintiffs and Class Members of benefits for which they paid Defendants in full.

67.     Defendants eliminated the vast majority of their employees and cut other operating costs that they otherwise would have incurred had Defendants kept their North America ski resorts open for the full 2019-20 ski and snowboard season to June 2020, as they represented. Defendants have been unjustly enriched in retaining the revenues derived from Plaintiffs and Class Members' Epic Pass fees, while eliminating the services purchased by Plaintiffs and Class Members with those Pass fees. Retention of those moneys under these circumstances is unfair, unjust and inequitable because Defendants are retaining its customers full Pass fees while all of their North America ski resorts remain closed.

68.     Because Defendants' retention of the non-gratuitous benefits conferred on it by Plaintiffs and Class Members is unfair, unjust, and inequitable, Defendants must pay restitution to Plaintiffs and Class Members for their unjust enrichment, as ordered by the Court.

**COUNT V**
**Nationwide Class**
**Violation of Colorado Consumer Protection Act,**
**Colo. Rev. Stat. §§ 6-1-101,** *et seq***.**

69.     Plaintiffs hereby repeat and reallege the allegations contained in paragraphs 1 through 40 above of this complaint, as if fully alleged herein.

70.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Nationwide Class against Defendants or, alternatively, a Colorado Subclass.

71.     Defendants are each a "person" as defined by Colo. Rev. Stat. § 6-1-102(6).

72.     Plaintiffs and Class Members, as well as the general public, are actual  or potential consumers of the products and services offered by Defendants or successors in interest to  actual consumers.

73.     Defendants engaged in deceptive trade practices in the course of their business, in violation of Colo. Rev. Stat. § 6-1-105(1), including, but not limited to, by advertising nationwide that purchasers of their Epic Passes have unlimited, unrestricted skiing and snowboarding at Defendants' North America ski resorts for the entire 2019-20 ski season to June 2020.

74.     By engaging in deceptive trade practices in the course of their business and vocation, directly or indirectly affecting the people of Colorado and all other states where Epic Passes were sold, Defendants violated Colo. Rev. Stat. § 6-1-105(g) by representing that goods and services are of a particular standard or quality when they knew or should have known that they are of another.

75.     In particular, Defendants represented that the purchasers of Epic Passes would obtain "the best value and variety for unlimited skiing and riding" at their North America ski resorts for the entire ski season through at least May 2020, when in fact Defendants knew or should known that in the event that they closed all of their North America ski resorts before the end of the ski season they would retain 100% of the price paid to Defendants for the Passes.

76.     Defendants' representations and omissions were material because they were likely to deceive reasonable consumers if Defendants failed to keep their North America ski resorts open for the duration of the ski and snowboard season as promised.

77.     Plaintiffs and the Class Members acted reasonably when they purchased Defendants' Passes based on their belief that Defendants' representations were true and lawful.

78.     Defendants' actions violate Colorado's Consumer Protection Act, and recklessly disregarded Plaintiffs and Class Members' rights by accepting Plaintiffs' and Class

Members' payments in full for the Epic Passes, which were represented to allow Pass holders the ability to ski and snowboard to June 2020, but by prematurely closing its resorts and refusing to refund the fees paid by Plaintiffs and Class Members.

79.     As a direct and proximate result of Defendants' deceptive trade practices, Plaintiffs and the Class Members suffered injuries to their legally protected interests, including because: (a) they would not have purchased or paid for Defendants' Passes absent Defendants' representations and omission of a warning that they would retain 100% of Class Members' Pass holder fees while all Vail North America ski resorts are closed; (b) they would not have purchased Passes on the same terms absent Defendants' representations and omissions; (c) they paid a price premium for Defendants' Passes based on Defendants' misrepresentations and omissions; and (d) Defendants' Passes did not have the characteristics, benefits, or quantities as promised.

80.     Defendants' deceptive trade practices significantly impact the public because Defendants operate at least 34 North American ski resorts and, on information and belief, sell a large number of ski passes to consumers located in Colorado and every other state.

81.     Plaintiffs and the Class Members seek all monetary and non-monetary relief allowed by law, including the greater of: (a) actual damages, or (b) $500, or (c) three times actual damages (for Defendants' bad faith conduct); injunctive relief; and reasonable attorneys' fees and  costs.

### COUNT VI
### California Subclass
### Violation of California's Unfair Competition Law,
### California Business & Professions Code §§ 17200, *et seq*.

82.     The California Plaintiff(s) identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the California Subclass, repeats and realleges the

allegations contained in paragraphs 1 through 40 above of this complaint, as if fully alleged herein

83.    Plaintiff brings this claim individually and on behalf of members of the proposed California Subclass, who are citizens of California, against Defendants.

84.    Defendants are subject to California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.* The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising…."

85.    Defendants advertised and represented that their Pass holders would have "the best value and variety for unlimited skiing and riding" at their North America ski resorts for the entire ski season to June 2020. That representation was false and misleading to a reasonable consumer, including Plaintiff and the California Subclass Members, because Defendants in fact closed all of their North America ski resorts after only two-thirds of the ski season while retaining 100% of the price paid to Defendants by Class Members for the Passes.

86.    Defendants' business practices, described herein, violated the "unfair" prong of the UCL in that their conduct of refusing to issue refunds to Plaintiffs and Class Members is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits. Defendants' advertising of their Passes as being available for use at any time during the entire ski and snowboard season to June 2020 and their retention of Pass fees while their North America ski resorts are closed is of no benefit to consumers, but rather, is a substantial detriment.

87.     Plaintiff and the California Subclass Members acted reasonably when they purchased Passes from Defendants based on the belief that they would have unlimited access to Defendants' North America ski resorts for the entire 2019-20 ski season to June 2020.

88.     Plaintiff and the California Subclass Members lost money or property as a result of Defendants' UCL violations because Plaintiff and the California Subclass Members suffered injuries caused by Defendants because: (a) they would not have purchased or paid for Defendants' Passes absent Defendants' representations and omission of a warning that they would retain Class Members' Pass holder fees while all of their North America ski resorts are closed; (b) they would not have purchased Passes on the same terms absent Defendants' representations and omissions; (c) they paid a price premium for Defendants' Passes based on Defendants' misrepresentations and omissions; and (d) Defendants' Passes did not have the characteristics, benefits, or quantities as promised.

## COUNT VII
### California Subclass
### Violation of California's Consumers Legal Remedies Act,
### California Civil Code §§ 1750, *et seq.*
### (Injunctive Relief Only)

89.     The California Plaintiff(s) identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the California Subclass, repeats and realleges the allegations contained in paragraphs 1 through 40 above of this complaint, as if fully alleged herein.

90.     Plaintiff brings this claim individually and on behalf of members of the proposed California Subclass against Defendants.

91.     Plaintiff and California Subclass Members are residents of California and consumers who paid fees for use of Defendants' North America ski resorts for personal, family or household purposes. Plaintiff and the California Subclass Members are "consumers" as that term is defined by California's Consumers Legal Remedies Act ("CLRA") in Cal. Civ. Code § 1761(d).

92.     Access to Defendants' North America ski resort that Plaintiff and the California Subclass Members purchased from Defendants was a "good" or "service" within the meaning of Cal. Civ. Code §§ 1761(a) and (b).

93.     Defendants' actions, representations, and conduct have violated, and continue to violate the CLRA, because they extend to transactions that intended to result, or which have resulted in, the sale of goods or services to consumers.

94.     Defendants' advertising and marketing that consumers would have "unlimited skiing and riding" at all of their North America ski resorts and that their customers would have access to its ski resorts upon paying a fee is false and misleading to a reasonable consumer, including Plaintiff, because Defendants in fact closed all of their North America ski resorts effective March 15, 2020, about one-third short of the promised duration of the ski and snowboard season, while continuing to retain the full price Class Members' paid for Defendants' Epic Passes

95.     California's CLRA, Cal. Civ. Code § 1770(a)(5), prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have." By engaging in the conduct set forth herein,

Defendants violated and continue to violate Section 1770(a)(5) of the CLRA, because Defendants' conduct constitutes unfair methods of competition and unfair acts or practices, in that Defendants misrepresented the particular characteristics, benefits and quantities of the services.

96.     Under the CLRA, Cal. Civ. Code § 1770(a)(7) prohibits representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another. By engaging in the conduct set forth herein, Defendants violated and continue to violate Section 1770(a)(7) of the CLRA, because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that Defendants' actions in March 2020 in shuttering all of their North America ski resorts were contrary to the services advertised.

97.     Plaintiff and the California Subclass Members acted reasonably when they purchased Defendants' Passes on the belief that Defendants' representations were true and lawful.

98.     Plaintiff and the California Subclass Members suffered injuries caused by Defendants because: (a) they would not have purchased or paid for Defendants' Passes absent Defendants' representations and omission of a warning that they would retain Class Members' Pass holder fees while all of their North America ski resorts are closed; (b) they would not have purchased Passes on the same terms absent Defendants' representations and omissions; (c) they paid a price premium for Defendants' Passes based on Defendants' misrepresentations and omissions; and (d) Defendants' Passes did not have the characteristics, benefits, or quantities as promised.

99.     Under the CLRA, Civil Code § 1780(a), Plaintiff and Members of the California

Subclass seek injunctive and equitable relief for Defendants' violations of the CLRA. Plaintiff

has mailed or will mail an appropriate demand letter consistent with California Civil Code §

1782(a). If Defendants fail to take corrective action within 30 days of receipt of the demand

letter, Plaintiff will amend this complaint to include a request for damages as permitted by Civil

Code § 1782(d).

100.    Wherefore, Plaintiff seeks injunctive and equitable relief for Defendants'

violations of the CLRA.

**COUNT VIII**
**Massachusetts Subclass**
**Violation of Massachusetts Consumer Protection Act,**
**Mass. Gen. Laws Ann. Ch. 93A, §§ I,** *et seq.*

101.    The Massachusetts Plaintiff(s) identified above ("Plaintiff," for purposes of this

Count), individually and on behalf of the Massachusetts Subclass, repeat and reallege the

allegations contained in paragraphs 1 through 40 above of this complaint, as if fully alleged

herein.

102.    Plaintiff brings this claim individually and on behalf of members of the proposed

Massachusetts Subclass, who are Massachusetts residents, against Defendants.

103.    The Massachusetts Consumer Protection Act ("MCPA"), Mass. Gen. Laws, Ch.

93A, *et seq*., makes it unlawful to engage in any "unfair or deceptive acts or practices

in the conduct of any trade or commerce" and, in interpreting its provisions, requires

consideration be given to interpretations by the Federal Trade Commission ("FTC") relating to §

5 of the FTC Act.  *See* Mass. Gen. Laws, Ch. 93A §§ 2(a) and (b).

104.     Defendants, Plaintiff, and Massachusetts Subclass Members each are "persons" as defined by Mass. Gen. Laws, Ch. 93A, § 1(a).

105.     Defendants operate in "trade" or "commerce" as defined by Mass. Gen. Laws Ann. Ch. 93A, § 1(b).

106.     Defendants advertised, offered, or sold goods or services in Massachusetts and engaged in trade or commerce directly or indirectly affecting the people of Massachusetts, as defined by Mass. Gen. Laws Ann. Ch. 93A, § 1(b).

107.     Defendants engaged in unfair methods of competition and unfair or deceptive acts and practices in the conduct of trade or commerce, in violation of Mass. Gen. Laws Ann. Ch. 93A, §§ 2(a) and 9, including, but not limited to, by closing all of their North America ski resorts after approximately two-thirds of the duration of the represented ski season while retaining 100% of the price paid to Defendants for the Passes despite advertising that their Pass holders would have "unlimited skiing and riding" at their North America ski resorts for the entire ski season to June 2020.

108.     Defendants' conduct is unfair within the meaning of Chapter 93A of the MCPA because it constitutes immoral, unethical, oppressive, and unscrupulous activity, caused substantial injury to consumers and businesses, and provided no benefit to consumers or competition.

109.     As a direct and proximate result of Defendants' deceptive trade practices, Plaintiff and the Massachusetts Subclass Members suffered injuries to their legally protected interests, including because: (a) they would not have purchased or paid for Defendants' Epic Passes absent Defendants' representations and omission of a warning that they would retain Class Members'

Pass holder fees while all of their North America ski resorts are closed; (b) they would not have purchased the Passes on the same terms absent Defendants' representations and omissions; (c) they paid a price premium for Defendants' Passes based on Defendants' misrepresentations and omissions; and (d) Defendants' Passes did not have the characteristics, benefits, or quantities as promised.

110.   Plaintiff and the Massachusetts Subclass Members seek all monetary and non-monetary relief allowed by law, including actual damages, double or treble damages, injunctive or other equitable relief, and attorneys' fees and costs.

### COUNT IX
### Minnesota Subclass
### Violation of Minnesota Consumer Fraud Act,
### Minn. Stat. §§ 325F.68, *et seq.* and Minn. Stat. §§ 8.31, *et seq.*

111.   The Minnesota Plaintiff(s) identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Minnesota Subclass, repeats and realleges the allegations contained in paragraphs 1 through 40 above of this complaint, as if fully alleged herein.

112.   Plaintiff brings this claim individually and on behalf of members of the proposed Minnesota Subclass, who are residents of Minnesota, against Defendants.

113.   Defendants, Plaintiff, and the Minnesota Subclass Members are each a "person" as defined by Minn. Stat. § 325F.68(3).

114.   Defendants' services available to purchasers of their Epic Passes are "merchandise" as defined by Minn. Stat. § 325F.68(2).

115.   Defendants engaged in "sales" as defined by Minn. Stat. § 325F.68(4).

116.    Defendants engaged in false promises, misrepresentations, misleading statements, or deceptive practices in connection with the sale of merchandise, in violation of Minn. Stat. § 325F.69(1), as described herein.

117.    Defendants' misrepresentations and omissions described herein were material because they were likely to deceive reasonable consumers.

118.    Defendants intended to induce Plaintiff and the Minnesota Subclass Members to rely on their misrepresentations and omissions by representing, promoting, and advertising that purchasers of Defendants' Epic Passes would have "unlimited skiing and riding" at Defendants' North America ski resorts for the entire 2019-20 ski season to June 2020.

119.    Defendants' misleading, or deceptive practices affected the public interest, including Minnesotans who purchased Epic Passes from Defendants.

120.    As a direct and proximate result of Defendants' deceptive acts and practices, Plaintiff and the Minnesota Subclass Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Epic Passes.

121.    Plaintiff and the Minnesota Subclass Members seek all monetary and non-monetary relief allowed by law, including damages, injunctive or other equitable relief, and attorneys' fees, disbursements, and costs.

**COUNT X**
**Minnesota Subclass**
**Violation of Minnesota Uniform Deceptive Trade Practices Act,**
**Minn. Stat. §§ 325D.43, *et seq.***

122.    The Minnesota Plaintiff(s) identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Minnesota Subclass, repeats and realleges the allegations contained in paragraphs 1 through 40 above of this complaint, as if fully alleged herein.

123.    Plaintiff brings this claim individually and on behalf of the proposed Minnesota Subclass Members, who are Minnesota residents, against Defendants.

124.    Defendants engaged in deceptive trade practices in the course of their business, in violation of Minnesota's Uniform Deceptive Trade Practices Act ("MNUDTPA"), Minn. Stat. § 325D.44, including, but not limited to, by advertising that purchasers of Defendants' Epic Passes would have unlimited, unrestricted skiing at Defendants' North America ski resorts for the entire 2019-20 ski season to June 2020.

125.    By engaging in deceptive trade practices in the course of their business and vocation, directly or indirectly affecting the people of Minnesota, Defendants violated Minn. Stat. § 325D.44, including the following provisions: representing that their goods and services had characteristics, uses, and benefits that they did not have, in violation of Minn. Stat. § 325D.44(1)(5); representing that goods and services are of a particular standard or quality when they are of another, in violation of Minn. Stat. § 325D.44(1)(7); and engaging in other conduct which similarly creates a likelihood of confusion or misunderstanding, in violation of Minn. Stat. § 325D.44(1)(13).

126.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

127.    Defendants intended to induce Plaintiff and the Minnesota Subclass Members to rely on their misrepresentations and omissions.

128.    Defendants recklessly disregarded the rights of Plaintiff and the Minnesota Subclass Members.

129.    As a direct and proximate result of Defendants' deceptive trade practices, Plaintiff and the Minnesota Subclass Members suffered injuries to their legally protected interests, including because: (a) they would not have purchased or paid for Defendants' Epic Passes absent Defendants' representations and omission of a warning that they would retain Class Members' Pass holder fees while all of their North America ski resorts nationwide are closed; (b) they would not have purchased Passes on the same terms absent Defendants' representations and omissions; (c) they paid a price premium for Defendants' Passes based on Defendants' misrepresentations and omissions; and (d) Defendants' Passes did not have the characteristics, benefits, or quantities as promised.

130.    Plaintiff and the Minnesota Subclass Members seek all monetary and non-monetary  relief allowed by law, including injunctive relief and attorneys' fees and costs.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendants, as follows:

a)      For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Plaintiffs' attorneys as Class Counsel to represent the Class Members;

b)      For an order certifying the Subclasses under Rule 23 of the Federal Rules of Civil Procedure and naming the California Plaintiff as representative of the California Subclass, the Colorado Plaintiff as representative of the Colorado Subclass, the Massachusetts Plaintiff as representative of the Massachusetts Subclass, the Minnesota Plaintiff as representative of the Minnesota Subclass, and Plaintiffs' attorneys as Class Counsel to represent the Subclasses' Members.

c)      For an order declaring that Defendants' conduct violates the statutes and laws referenced herein;

d)      For an order finding in favor of Plaintiffs, the Class, and the Subclasses, on all counts asserted herein;

e)      For compensatory damages in an amount to be determined by the Court and/or jury;

f)      For prejudgment interest on all amounts awarded;

g)      For an order of restitution and all other forms of equitable monetary relief;

h)      For injunctive relief as pleaded or as the Court may deem proper; and

i)      For an order awarding Plaintiffs and the Class their reasonable attorneys' fees and expenses and costs of suit.

**JURY DEMAND**

Plaintiffs demand a trial by jury on all causes of action and issues so triable.

**HELLMUTH & JOHNSON, PLLC**

Dated: April 22, 2020          By:     s/Richard M. Hagstrom
                                       Richard M. Hagstrom (MN #39445)
                                       Alec C. Sherod (CO #31505)
                                       *Not admitted in District of Colorado*
                                       Michael R. Cashman (MN #398250)
                                       *Not admitted in District of Colorado*
                                       Gregory S. Otsuka (MN #397873)
                                       *Not admitted in District of Colorado*
                                       Daniel K. Asiedu (MN #399151)
                                       *Not admitted in District of Colorado*
                                       Faline M. Williams (MN #400292)
                                       *Not admitted in District of Colorado*
                                       8050 West 78th Street
                                       Edina, Minnesota 55439
                                       Telephone: (952) 941-4005
                                       Facsimile: (952) 941-2337
                                       Email: rhagstrom@hjlawfirm.com
                                               asherod@hjlawfirm.com
                                               mcashman@hjlawfirm.com
                                               gotsuka@hjlawfirm.com
                                               dasiedu@hjlawfirm.com
                                               fwilliams@hjlawfirm.com

OF COUNSEL

G. Randall Garrou (CA #74442)              Peter M. Fisher, Esq., (MA #679254)
*Not admitted in District of Colorado*     *Not admitted in District of Colorado*
**WESTON, GARROU & MOONEY**                **FISHER LAW OFFICE, PLLC**
12121 Wilshire Boulevard, Suite 525        13031 McGregor Blvd., Suite 13
Los Angeles, California 90025              Fort Myers, FL 33919
Telephone:  (310) 442-0072                 Telephone:  (239) 236-8656
Facsimile:  (310) 442-0899                 Facsimile:  (239) 790-1358
Email:  randygarrou@wgdlaw.com             Email:  Peter@FisherLawFL.com

ATTORNEYS FOR PLAINTIFFS AND THE PROPOSED CLASS

29